UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: ) | |
| ) | CASE No.    21-50644 (JAM) |
| THE NASH ENGINEERING COMPANY, ) | |
| ) | CHAPTER    7 |
| DEBTOR. ) | |
| ) | RE: ECF No.    98 |

### APPEARANCES

| | |
|---|---|
| James Berman, Esq.<br>*Attorney for the Debtor*<br>Zeisler and Zeisler<br>10 Middle Street, 15th Floor<br>Bridgeport, Connecticut 06604 | Mr. George I. Roumeliotis<br>*Chapter 7 Trustee*<br>Roumeliotis Law Group, P.C.<br>157 Church Street, 19th Floor<br>New Haven, Connecticut 06510 |
| Irve J. Goldman, Esq.<br>*Attorney for Century and Pacific*<br>Pullman & Comley<br>850 Main Street, 8th Floor, P.O. Box 7006<br>Bridgeport, Connecticut 06601-7006 | Taruna Garg, Esq.<br>Daniel Cohn, Esq.<br>*Proposed Counsel for the*<br>*Chapter 7 Trustee*<br>Murtha Cullina LLP<br>177 Broad Street<br>Stamford, CT 06901 |
| Henry P. Baer, Esq.<br>*Attorney for Gardner Denver, Inc.*<br>Finn Dixon & Herling LLP<br>Six Landmark Square<br>Stamford, CT 06901-2704 | |

### MEMORANDUM OF DECISION AND ORDER
### DISMISSING CASE PURSUANT TO 11 U.S.C. § 707(a)

Julie A. Manning, United States Bankruptcy Judge

**I.    Introduction**

At first glance, the Chapter 7 case of The Nash Engineering Company (the "Debtor") appears to be an ordinary Chapter 7 case requiring minimal court intervention. However, the Debtor's case is anything but ordinary. More than ninety eight percent of the Debtor's creditors—1,668 of the total 1,696 creditors—are contingent, disputed, and unliquidated asbestos personal injury tort claimants. Consequently, the Court finds itself in the unfortunate position of

having to scrutinize the proposed administration of this case and examine the reasons why certain parties, but not the Debtor, oppose dismissal of this case.

When the unusual facts and circumstances surrounding the Debtor's case became apparent, the Court issued an Order Scheduling a Status Conference to discuss, among other things, the administration of the Debtor's case (ECF No. 41). After conducting two Status Conferences, the Court then issued an Order: (I) Providing Opportunity to Show Cause Why Court Should Not Dismiss Case Pursuant to 11 U.S.C. §§ 305 and/or 707(a); and (II) Staying Case Pending Ruling on Dismissal of Case (the "Order to Show Cause," ECF No. 98). The Order to Show Cause identified several reasons why the Debtor's case should be dismissed, including: (i) the plain language of 28 U.S.C. § 157(b)(2)(B) prohibits the "*liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11*," 28 U.S.C. § 157(b)(2)(B) (emphasis added); and (ii) the Debtor's case lacks a legitimate bankruptcy purpose. The Order to Show Cause was served on all appearing parties and on all the Debtor's contingent and unliquidated asbestos personal injury tort claimants.

Not one of the 1,668 contingent and unliquidated asbestos personal injury tort claimants filed a response to the Order to Show Cause. The only parties who filed a response to the Order to Show Cause are the Debtor, George Roumeliotis (the "Chapter 7 Trustee"), Century Indemnity Company and Pacific Employers Insurance Company ("Century and Pacific"), and Gardner Denver ("Gardner Denver") (ECF Nos. 102, 103, 104, and 106)[1]. The Debtor states in

---

[1] Century and Pacific is an umbrella level liability insurer who generally paid the Debtor's defense counsel in the asbestos personal injury tort actions commenced against the Debtor and other defendants before this case was filed. Gardner Denver purchased all the Debtor's assets in 2004 and is named as an additional defendant in approximately 140 of the asbestos personal

its response that it takes "no position with respect to resolution of [the] Order to Show Cause," thereby waiving any objection to dismissal of its Chapter 7 case. The responses filed by the Chapter 7 Trustee and Century and Pacific oppose dismissal of the Debtor's case, asserting dismissal is not appropriate under section 305(a) or section 707(a). Finally, the response of Gardner Denver contends that dismissal of the Debtor's case at this stage would be premature.

The Court held a hearing on the Order to Show Cause on April 27, 2022. At the conclusion of the hearing, the Court took the Order to Show Cause under advisement. After a careful review of the record in this case and consideration of the arguments advanced by the parties during the Status Conferences and the hearing on the Order to Show Cause, under the specific facts and circumstances of this case, the Court concludes that cause exists to dismiss the Debtor's case pursuant to 11 U.S.C. § 707(a).[2]

## II.    Facts

The facts leading up to and following the filing of the Debtor's Chapter 7 case are not in dispute. On October 19, 2021, the Debtor filed a voluntary Chapter 7 no asset case. On October 20, 2021, the Clerk's Office issued an Official Form 309C Notice of Chapter 7 Bankruptcy

---

injury tort actions brought against the Debtor in which successor liability claims have been asserted.

[2] Although cause exists to dismiss the Debtor's case under section 707(a), the facts and circumstances surrounding the Debtor's case also support dismissal under section 305(a). *In re International Zinc Coatings & Chemical Corp.*, 355 B.R. 76 (Bankr. N.D. Ill. 2006). While dismissal under section 305(a) is an extraordinary remedy that "should be used sparingly," *see In re Sapphire Development, Inc.*, 523 B.R. 1, 7-8 (D. Conn. 2014), the Court is persuaded by and adopts the reasoning in *Zinc*, which when applied to the facts and circumstances of this case, results in additional cause for dismissal under section 707(a). *See In re Newbury Operating LLC*, No. 20-12976, 2021 WL 1157977 (Bankr. S.D.N.Y. 2021) (dismissing case under both sections 305(a) and 707(a)). While dismissal under section 305(a) is warranted, the Court dismisses this case under section 707(a) in the interests of judicial economy and efficiency consistent with the District Court's concern that section 305(a) "not be used as a substitute" for dismissal under the Code's other available dismissal provisions. *See In re Sapphire Development, Inc.*, 523 B.R. at 12.

Case—No Proof of Claim Deadline (ECF No. 4), which instructed creditors not to file Proofs of Claim because no property appeared to be available to pay creditors. The Debtor filed its Schedules and Statement of Affairs on November 2, 2021 (ECF Nos. 8 and 9), which confirmed that it has: (i) no assets other than product liability insurance with unknown value; (ii) 1,696 unsecured creditors, 98.3% of which are disputed, contingent, or unliquidated asbestos personal injury tort claimants; (iii) no gross revenue from business operations; and (iv) no non-business revenue including money collected from lawsuits.

The Debtor was in the business of manufacturing liquid ring vacuum pumps used in various industries for vacuum steam heating systems, vacuum sewage collection systems, and to manufacture pulp and paper (ECF No. 106 at p. 2). Notably, the Debtor's business has not operated since 2002. In addition, the Debtor sold all of its assets to Gardner Denver in 2004. On April 20, 2020, the Debtor filed a Certificate of Dissolution with the Secretary of the State of Connecticut, almost eighteen (18) months before filing this voluntary no asset Chapter 7 case (Jan. 25, 2022 Status Conf. at 47:28 to 49:47).

Before filing this case, the Debtor resolved more than 27,000 asbestos personal injury tort claims asserted against it despite being out of business and selling off all of its assets decades ago (Jan. 25, 2022 Status Conf. at 3:36 to 4:11). However, at the time of the filing of this case, there were still more than 1,600 asbestos personal injury tort claims pending against the Debtor and other defendants in various courts throughout the country. In addition, *all* the asbestos personal injury tort claims are listed in the Debtor's Schedules as *disputed, contingent, and unliquidated*, a fact of which the Debtor was keenly aware of when it filed its case. (emphasis added). The Debtor admitted that it filed this case because the proceeds of the Debtor's

insurance policies that might be a source of payment on the remaining asbestos personal injury tort claims were largely exhausted. (ECF No. 8 and Jan. 25, 2022 Status Conf. at 3:36 to 4:21).

After the Section 341 Meeting of Creditors was held, the Chapter 7 Trustee filed the Trustee's Report of Assets in a Chapter 7 Case, thereby converting the Debtor's Chapter 7 no asset case to a Chapter 7 asset case (ECF No. 18). The Report of Assets described the discovered assets as "Potential insurance policy recoveries" and as "personal property," rather than "causes of action." [3] In addition to the thousands of pending asbestos personal injury actions commenced against the Debtor and other defendants, the "potential insurance policy recoveries" that the Chapter 7 Trustee asserts will allow him to administer the Debtor's estate are also the subject of pre-petition litigation—a declaratory judgment action commenced by umbrella level liability insurers against the Debtor in the United States District Court for the District of Connecticut. *See Columbia Casualty Company et al v. Nash Engineering Co.*, No. 21-01075 (D. Conn., the "District Court action"). Much like Century and Pacific, the Plaintiffs in the District Court action are the Debtor's additional umbrella level liability insurers who seek a determination that they have no obligation to pay any amounts under the umbrella level liability policies until the limits of the primary level liability insurance policies are exhausted.

The Chapter 7 Trustee and Century and Pacific continue to insist that the Chapter 7 Trustee is entitled to administer the contingent and unliquidated asbestos personal injury tort claims, the Debtor's case serves a legitimate bankruptcy purpose, and that the Debtor's case should not be dismissed. The Court disagrees.

---

[3] The insurance policies the Chapter 7 Trustee states he discovered were all listed on the Debtor's Schedule A/B filed before the Section 341 Meeting of Creditors was held. The same is true of the asbestos personal injury tort and declaratory judgment causes of action which appear in a 69-page list of legal actions contained in the Debtor's Statement of Financial Affairs. ECF No. 9, at p. 2, 9-78.

5

**III.    Analysis**

  **A.  Dismissal pursuant to 11 U.S.C. §707(a).**

Section 707(a) governs dismissal of a Chapter 7 case. The Court is allowed to dismiss a case under Section 707(a) "only after notice and a hearing and only for cause…" The section goes on to list examples of when dismissal may be appropriate. Those listed examples, however, are not exclusive. *See* 11 U.S.C. § 102(3); *In re Murray*, 900 F.3d 53 (2d Cir. 2018) (affirming the district court and bankruptcy court decisions dismissing case under section 707(a) for cause) (citing *In re Smith*, 507 F.3d 64, 72 (2d Cir. 2007)). While "cause" is not defined in the Code, courts in this circuit have noted that "cause" includes "bad faith *or circumstances falling short of bad faith but nevertheless representing an inappropriate use of the Code*." *In re Murray*, 543 B.R. 484, 490 (Bankr. S.D.N.Y. 2016) (emphasis added). Although *Murray* was an involuntary Chapter 7 case, its analysis of section 707(a) confirms that dismissal for cause under section 707(a) can occur in both involuntary and voluntary Chapter 7 cases. *In re Murray*, 565 B.R. 527, 531 (S.D.N.Y. 2017). The reasoning employed by the bankruptcy court in *Murray* – which was affirmed by both the United States District Court for the Southern District of New York and the United States Court of Appeals for the Second Circuit – clearly provides that cases filed in bad faith, *or* in an attempt to inappropriately use the Code, can be dismissed for cause under section 707(a). *In re Murray*, 543 B.R. at 490. *Murray* also finds that "cause" for dismissal under section 707(a) (and section 1112(b) or relief from the stay, whose standards are not substantively different) may result from circumstances not specifically mentioned in the Code. *Id.* (citing *C-TC 9th Avenue Partnership v. Norton Comp. (In re C-TC 9th Avenue Partnership)*, 113 F.3d 1304 (2d Cir. 1997)).

6

Even though no party in interest or the Chapter 7 Trustee has filed a motion to dismiss the Debtor's case, the Court is within its right to conduct its own inquiry in a case. *See In re Blumenberg*, 263 B.R. 704, 711-12 (Bankr. E.D.N.Y. 2001) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43-44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) for the proposition that courts have "an array of inherent judicial powers necessary … to manage their own affairs," and quoting *In re Khan,* 172 B.R. 613, 622 (Bankr. D. Minn. 1994) to support the point in *Chambers* that enables courts to "inquire into a debtor's motivation for filing as part of its inherent power 'to regulate its own docket to ensure that its process is not being abused.'"). Therefore, a court can determine if cause exists to dismiss a case under section 707(a) based upon the specific facts and circumstances of a case. *See In re Murray*, 900 F.3d at 58.

    **B. Cause exists to dismiss the Debtor's case because contingent or unliquidated personal injury tort claims cannot be liquidated or estimated for purposes of distribution in a Chapter 7 case**.

Congress enacted specific amendments to the United States Code in 1984 to address the administration of personal injury tort claims in connection with a ***plan*** filed in a ***Chapter 11, 12, or 13*** bankruptcy case, not in a Chapter 7 liquidation case in which a plan is never filed. Bankruptcy Amendments and Federal Judgeship Act of 1983, Pub. L. 98-353, title I, § 104(a), 98 Stat. 340 (1984) (codified as 28 U.S.C. § 157(b)(2)(B)) (emphasis added). Section 157(b)(2)(B) clearly provides that contingent or unliquidated personal injury tort claims cannot be liquidated or estimated for purposes of distribution in any bankruptcy case, including a Chapter 7 case.

Section 157(b)(2)(B) was enacted in response to the *Northern Pipeline* decision and the controversy surrounding the jurisdiction of the bankruptcy courts. *See Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); 1 *Collier on Bankruptcy* ¶ 3.02[1] (Richard Levin & Henry J. Sommer eds., 16th ed.

7

2022); *see also In re Gawker Media LLC*, 571 B.R. 612, 621 (Bankr. S.D.N.Y. 2017). Congress expressly provided in section 157(b)(2) that there are 16 categories that are "core" proceedings. *Stern v. Marshall*, 564 U.S. 462, 474, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). However, the plain language of section 157(b)(2)(B) **removes** from the "core" proceeding categories "the liquidation or estimation of contingent or unliquidated personal injury claims … against the estate for purposes of distribution in a case under title 11." (emphasis added).

In addition to the plain language of the statute, one court noted that the legislative history of section 157(b)(2)(B) confirms the intent of Congress to preclude the liquidation or estimation of the asbestos personal injury tort claims that is proposed by the Chapter 7 Trustee in this case:

> The personal injury tort/wrongful death exception originated with lobbying, including testimony, from personal injury lawyers who found themselves and their clients dragged into the Johns-Manville case and other asbestos bankruptcies….In the wake of the Manville bankruptcy and the Supreme Court's decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1983), the Senate conducted hearings to consider amendments to the Bankruptcy Code and related jurisdictional provisions….Robert Steinberg, Esq., appearing on behalf of the Asbestos Litigation Group, an association of lawyers representing plaintiffs in asbestos litigation, testified that "the bankruptcy courts have other challenging and difficult issues to deal with and should not be a repository for thousands and thousands of personal injury claims and the necessity to litigate those."

*Gawker*, 571 B.R. at 621 (internal citations omitted); *see also The Manville Bankruptcy and the Northern Pipeline Decision: Hearing on The Manville Bankruptcy and Amendments To the Bankruptcy Code Relating To The Northern Pipeline Decision*, 98th Cong. 37 (1982) [hereinafter *Comm. Hr'g*] (statement of Robert Steinberg, Esq. appearing on behalf of the Asbestos Litigation Group), *reprinted in* ARNOLD & PORTER LLP LEGISLATIVE HISTORY: P.L. 98-353 (1993).

The Committee Record further cites to a letter to Senator Robert Dole from John P. Sears, Esq., another representative of the Asbestos Litigation Group, that refers to "the well-established principle of American jurisprudence that the exercise of an individual's right to a trial

8

by jury of a personal injury and wrongful death claim is the most effective and fair method of resolution," and asserting that "[a]sbestos victims must not be stripped of their constitutional right to a trial by jury of their personal injury and wrongful death claims." *Comm. Hr'g*, 98th Cong. 71-72 (1982) (statement of John P. Sears, Esq. appearing on behalf of the Asbestos Litigation Group). Although the plain language of section 157(b)(2)(B) is unambiguous, the legislative history and the Committee Record confirm the conclusion that the Chapter 7 Trustee cannot liquidate or estimate the contingent and unliquidated asbestos personal injury tort claims for distribution in this case.

In its Schedules and Statement of Financial Affairs, the Debtor admits that every one of the asbestos personal injury tort claims asserted against it are contingent and unliquidated claims. Despite this admission, the Chapter 7 Trustee inexplicably disregards the plain language of section 157(b)(2)(B) and proposes to do exactly what the statute prohibits—administer the more than 1,600 remaining contingent and unliquidated asbestos personal injury tort claims asserted against the Debtor and other defendants. (Tr. of Mar. 22, 2022 Status Conference, ECF No. 110, at 18:5-10). The Trustee affirmed his decision to ignore section 157(b)(2)(B) by seeking to employ special counsel to, among other things, "bring in as much money as we can possibly can, especially from the insurance assets…" and then "we expect there will be a distribution…." (Jan. 25, 2022 Status Conf. at 24:08 to 24:23).

The responses to the Order to Show Cause filed by the Debtor, the Chapter 7 Trustee, Century and Pacific, and Gardner Denver do not address the impact of 28 U.S.C. § 157(b)(2)(B) on the Debtor's case. Interestingly, the Debtor's response does not even attempt to address the section 157(b)(2)(B) issue. The Chapter 7 Trustee merely states that section 157(b)(2)(B) "says nothing about dismissal." (Trustee's Response, ECF No. 106, at p. 19.) The failure of the

9

Debtor and the Chapter 7 Trustee to specifically address that section 157(b)(2(B) prohibits the liquidation or estimation of the asbestos personal injury tort claims in this case is telling.

The Debtor and Chapter 7 Trustee are attempting to use the bankruptcy court as a "repository" for the more than 1,600 contingent and unliquidated asbestos personal injury tort claims. *See Gawker*, 571 B.R. at 621 (citing *Comm. Hr'g*, 98th Cong. 37 (1982) (statement of Robert Steinberg, Esq.)). In so doing, the Debtor and the Chapter 7 Trustee seek to "drag" these claimants who have not "voluntarily become involved" with the Debtor into this case. *See Gawker*, 571 B.R. at 621 (citing in part 130 CONG. REC. 17154 (daily ed. June 19, 1984) (remarks of Sen. Dennis DeConcini)). Furthermore, the Debtor and the Chapter 7 Trustee both fail to acknowledge that the contingent and unliquidated asbestos personal injury tort claims have not only been asserted against the Debtor but have also been asserted against multiple defendants throughout the country. The Chapter 7 Trustee's proposed administration of these claims will also improperly "drag" those defendants into this Court and ignore their substantive rights that exist outside of this Court.

In support of his proposed administration of the contingent and unliquidated asbestos personal injury tort claims, the Chapter 7 Trustee cites to an article "Judicial Management of Mass Tort Bankruptcy Cases," published by the Federal Judicial Center. S. ELIZABETH GIBSON, FED. JUD. CTR., JUDICIAL MANAGEMENT OF MASS TORT BANKRUPTCY CASES (2005). The article exclusively examines mass torts in Chapter 11 cases, not in Chapter 7 cases. *Id*. It is clear that the Chapter 7 Trustee is proposing to administer the contingent and unliquidated asbestos personal injury tort claims as if this case is a Chapter 11 case. However, this case is a Chapter 7 liquidation case, not a Chapter 11 reorganization case. When questioned about the treatment of asbestos personal injury tort claims in Chapter 7 cases as opposed to Chapter 11

10

cases, the Trustee's proposed special counsel said, "But fortunately, we are actually treading on a well-trod path here concerning how claims get dealt with in asbestos, in a case where there are asbestos personal injury claims." (Jan. 25, 2022 Status Conf. at 21:58 to 22:30). No such "well-trod path" exists to administer contingent and unliquidated asbestos personal injury tort claims in Chapter 7 cases. The Chapter 7 Trustee concedes this fact by his misplaced reliance on the Federal Judicial Center article and on the overwhelming majority of Chapter 11 cases cited in his response to the Order to Show Cause. The only references to Chapter 7 cases are to the dockets of five Chapter 7 cases and not to even a single reported or unreported decision in a Chapter 7 case addressing this issue. The Chapter 7 Trustee's arguments regarding the section 157(b)(2)(B) issue are therefore not at all responsive and are not persuasive.

Rather than address the issue head on, the Trustee and Century and Pacific make extensive policy arguments about the fundamental purpose of equal distribution to creditors under the bankruptcy code and the desire to avoid a chaotic race to the courthouse by creditors. With respect to the first argument, maximizing the value of assets is a fundamental purpose of the bankruptcy code, but not all bankruptcy cases do or should remain in the bankruptcy court. *See, e.g.*, 11 U.S.C. §§ 707, 1112, 1208, and 1307. Absent a legitimate bankruptcy purpose, a Chapter 7 case can and should be dismissed under either section 305(a) or 707(a). *See, e.g.*, *In re Murray*, 565 B.R. 527 (S.D.N.Y. 2017), *In re International Zinc Coatings & Chemical Corp.*, 355 B.R. 76 (Bankr. N.D. Ill. 2006); *In re Newbury Operating LLC*, No. 20-12976, 2021 WL 1157977 (Bankr. S.D.N.Y. 2021) (dismissing case under both sections 305(a) and 707(a)). Furthermore, during the Show Cause hearing, the Chapter 7 Trustee's proposed counsel stated that only the asbestos personal injury tort claimants who file proof of claims in this case will receive a distribution on their claims—a fact that does not support the argument that all

11

creditors will receive an equal distribution in the Debtor's case.  (Tr. of Apr. 27, 2022 Hr'g on Order to Show Cause, ECF No. 119, at 15:6-15:9). [4]

The second argument regarding the "chaotic" race to the courthouse that will occur upon dismissal is also not persuasive.  It is undisputed that the Debtor resolved or otherwise disposed of more than 27,000 asbestos personal injury tort claims and lawsuits before it filed its case.  The race to the courthouse has already taken place.  Judicial economy will not be served by the Chapter 7 Trustee's proposed administration of the remaining 1.7% of contingent and unliquidated claims and there is no need (or authority) to consolidate the remaining contingent and unliquidated asbestos personal injury claims in this Court.  Furthermore, not one of the claimants is asking this Court to do so.  The contingent and unliquidated asbestos personal injury tort claims arise exclusively under state law, not bankruptcy law, and are properly being administered outside of this Court.

### C. Cause also exists to dismiss the Debtor's case because it lacks a legitimate bankruptcy purpose.

A bankruptcy case must have its own justification for being, one related to a legitimate bankruptcy purpose.  *In re Murray*, 900 F.3d at 62-63 (affirming district and bankruptcy court dismissal under section 707(a)); *Asociación de Titulares de Condominio Castillo*, 581 B.R. 346 (1st Cir. BAP 2018); *In re LLC 1 07CH12487*, 608 B.R. 830, 846-48 (Bankr. N.D. Ill. 2019) (affirming dismissal of a case under section 707(a) for lack of a legitimate bankruptcy purpose);

---

[4] The Chapter 7 Trustee asserts that insurance policy proceeds are property of the Debtor's estate which can be used to "fund" this case.  The Court need not decide that issue because it is irrelevant.  The Chapter 7 Trustee cannot liquidate or estimate the contingent and unliquidated asbestos personal injury tort claims for purposes of distribution in this case–period.  Therefore, the arguments about the applicability *In re OGA Charters, LLC*, 901 F.3d 599 (5th Cir. 2018), a case that is factually distinguishable from the Debtor's case and is not binding in the Second Circuit, conveniently ignore the fact that the Chapter 7 Trustee's proposed administration of the contingent and unliquidated asbestos personal injury tort claims cannot occur in this case.

*In re International Zinc Coatings & Chemical Corp.*, 355 B.R. 76, 87 (Bankr. N.D. Ill. 2006) (dismissing under section 305(a) for absence of a legitimate bankruptcy purpose). In a Chapter 7 case, it is generally understood that the twin purposes of the case are providing the honest but unfortunate debtor with a discharge and "fresh start" while providing for the orderly liquidation of the debtor's non-exempt assets. *Asociación de Titulares de Condominio Castillo*, 581 B.R. at 362.

However, when the debtor is a corporation, the only purpose of a Chapter 7 case is to marshal and distribute assets as part of the fair and orderly liquidation of assets for creditors, which may explain the relatively few corporate Chapter 7 cases dismissed for lack of a legitimate bankruptcy purpose under either section 707(a) or 305(a). *Asociación de Titulares de Condominio Castillo*, 581 B.R. at 362; *Zinc,* 355 B.R. at 85. "When a bankruptcy serves no purpose, results in no benefit for its creditors or the debtor, and only delays litigation already pending against the debtor, there is 'cause' to dismiss the case." *In re Cypress Financial Trading Co., L.P.*, 620 Fed. Appx. 287, 289 (5th Cir. 2015) (dismissing corporate Chapter 7 case for "cause" for lack of a legitimate bankruptcy purpose); *see also Zinc,* 355 B.R. at 85 ("A corporate chapter 7 case with an empty estate, one where the debtor wound up years earlier, benefits neither the debtor nor its creditors, serves no legitimate purpose, and is properly dismissed under section 305(a)(1)."). The same reasoning applies to the Debtor's case and is also cause for dismissal.

Although the Debtor attempts to create a legitimate bankruptcy purpose for filing its Chapter 7 case, the Debtor admits that it filed this case because it recently concluded that it depleted the entirety of insurance coverage. The Debtor's response states:

> With its insurance coverage largely depleted and without resources to continue to defend the various asbestos and insurance coverage lawsuits against it, the Debtor

13

> decided to file its Chapter 7 Petition. In deciding to file its Chapter 7 Petition, the Debtor believed that a trustee, as independent fiduciary, would be in the best position to determine whether or not there were any additional assets to administer for the benefit of creditors; and if not, the trustee would close the Debtor's Chapter 7 case as a no asset case."

Debtor's Response, ECF No. 102, at p. 2.

When distilled to its essence, the Debtor's attempt to construct a legitimate bankruptcy purpose for the filing of its case falls short. The Debtor resolved more than 27,000 asbestos personal injury claims asserted against it after being out of business for more than 20 years and having sold all of its assets more than 18 years ago. However, when it recently discovered it ran out of insurance coverage to address the remaining claims, it decided to hand the problem over to the bankruptcy court. (Jan. 25, 2022 Status Conf. at 3:36 to 4:49 and 46:28 to 49:44). That is not a legitimate bankruptcy purpose. *See In re Murray*, 900 F.3d at 60; *Zinc*, 355 B.R. at 87; *In re Spade*, 258 B.R. 221, 233 (Bankr. D. Colo. 2001) (petitioning creditor filing an involuntary petition to control the forum and gain a litigation advantage over debtor by enlisting the trustee to conduct and pay for discovery into debtor's affairs was not a legitimate bankruptcy purpose).

Transferring the responsibility to defend the asbestos personal injury tort claims to another party due to the Debtor's depletion of its own insurance coverage is an inappropriate invocation of the bankruptcy system. *See, e.g.*, *In re Murray*, 543 B.R. at 486. The Debtor and the Chapter 7 Trustee have transformed this Court into a "rented battleground" and "debt collection agency" for their benefit and the benefit of insurers trying to limit liability. *See In re Murray*, 900 F.3d at 63 (affirming bankruptcy court's dismissal under 11 U.S.C. § 707(a) due to the lack of a legitimate bankruptcy purpose).

The Chapter 7 Trustee has done what the Debtor and possibly the insurers hoped—he has adopted the Debtor's improper attempt to construct a legitimate bankruptcy purpose for this case.

The Chapter 7 Trustee is seeking to use this Court as the forum to resolve all the remaining contingent and unliquidated asbestos personal injury tort claims and insurance liability issues under the guise of commencing speculative causes of action to "bring money into" an estate that has no viable assets. When the only assets of a bankruptcy estate are lawsuits, particularly one that creditors themselves can pursue outside of bankruptcy, no purpose is served in keeping the bankruptcy case alive. *Cf. Zinc,* 355 B.R. at 87; *In re Cincinnati Gear Co.*, 304 B.R. 784, 786 (Bankr. S.D. Ohio 2003) ("Courts have consistently held that dismissal is appropriate under § 305(a)(1) where the only estate assets are alleged lawsuits.").

The creditors can pursue all the pending and potential lawsuits outside of this Court, including the Chapter 7 Trustee's new allegations of claims against the Debtor's Directors and Officers, potential preferential actions transfers, and the pursuit of successor liability claims asserted against Gardner Denver by the asbestos personal injury tort claimants.[5] As noted in *In re Bean*, 251 B.R. 196 (E.D.N.Y. 2000), *aff'd*, 252 F.3d 113 (2d Cir. 2001), "when a cost benefit analysis indicates that the only parties who will likely benefit from an investigation of a claim are the trustee and his professionals, the investigation is unwarranted." Here, the Chapter 7 Trustee's proposed path to administer the claims includes the retention of counsel who will be paid a one-third contingency fee for every claim administered, which will result in massive administrative costs and clearly reduce any possible recovery by the asbestos personal injury tort claimants. *See Zinc,* 355 B.R. at 85-88. No true bankruptcy purpose is served where the estate will simply incur massive administrative costs that will reduce creditors' eventual recovery. *See Smith*, 507 F.3d 64, 75 (2d Cir. 2007) (citing *In re Dinova*, 212 B.R. 437, 442 (2d Cir. BAP

---

[5] Trustee's Response at p. 6.

15

1997) and *In re Schwartz*, 58 B.R. 923, 925 (Bankr. S.D.N.Y. 1986)); *Zinc*, 355 B.R. at 87 (citing *In re Jr. Food Mart of Ark., Inc.*, 241 B.R. 423, 426 (Bankr.E.D.Ark.1999)).

IV.     **Conclusion**

For the reasons set forth above, cause exists to dismiss the Debtor's case pursuant to 11 U.S.C. §707(a). This Court, and therefore the Chapter 7 Trustee, has no authority to liquidate or estimate the thousands of contingent and unliquidated asbestos personal injury tort claims asserted against the Debtor and other defendants. Furthermore, no legitimate bankruptcy purpose is served by allowing this case to proceed.

Accordingly, it is hereby

**ORDERED:** The Debtor's case is dismissed for cause in accordance with 11 U.S.C. §707(a); and it is further

**ORDERED:** All pending motions and applications filed in the Debtor's case, with the exception of the Motions for Stay Pending Appeal (ECF Nos. 105 and 109) filed before this Memorandum of Decision was issued, are denied as moot; and it further

**ORDERED**: Separate orders on the Motions for Stay Pending Appeal will enter.

Dated at Bridgeport, Connecticut this 25th day of May, 2022.

*Julie A. Manning*
United States Bankruptcy Judge
District of Connecticut